OPINION OF THE COURT
Stephen G. Crane, J.
In this special proceeding the petitioner, a securities broker-dealer, seeks an attachment in aid of arbitration (CPLR 7502 [c]). Respondents cross-move to dismiss for lack of in personam jurisdiction. Petitioner intends to arbitrate with respondents, *885 its former customers, who are West German residents, pursuant to the terms of the account agreement among them. The claim is for the debit balance in the account resulting from liquidation of the securities in the account following respondents’ alleged failure to comply with a $300,000 margin call.
A temporary restraining order was granted in the order to show cause. As a result, pending the determination of this proceeding, transfer of the assets in a brokerage account respondents maintain with Nesbitt Thomson Fahnestock International (Fahnestock) has been restrained. An undertaking of $12,500 was posted as a condition to the grant of this restraint.
The petition alleges that an attachment is necessary to prevent rendering ineffectual any arbitration award in view of the nonresidence of the respondents and their recent substantial losses. The answering papers vigorously contest the implication that, in the absence of the attachment, respondents lack sufficient means to satisfy any arbitration award. Indeed, respondents’ showing of the nature and extent of their wealth is uncontradicted. Petitioner tacitly concedes that respondents have sufficient assets to satisfy the $230,000 arbitration award it seeks by changing its ground for the attachment. In its reply to respondents’ arguments petitioner relies on its interpretation of the laws of West Germany that allegedly forbid Germans such as respondents from engaging in trading commodity futures and options, the very subject matter of their margin account with petitioner. It is asserted that no arbitration award or judgment to collect a debit balance in such an account may be enforced in the West German courts (citing Rogers and Markham, The Application of West German Statutes to United States Commodity Futures Contracts: An Unnecessary Clash of Policies, 19 Law and Pol’y In Int’l Bus 273 [1987]).
CPLR 7502 (c) in pertinent part provides: "The supreme court * * * may entertain an application for an order of attachment or for a preliminary injunction in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief.”
Thus, the ground available for attachments in aid of arbitration has been limited to the situation described in CPLR 6201 (3): "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be *886 rendered in plaintiff’s favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts”. Essentially, this confines the attachment in aid of arbitration to a security function whereas in a plenary action the grounds for attachment are broader and can serve a jurisdictional function, as well. (CPLR 6201 [1], [2]; Matter of Saferstein v Wendy, 137 Misc 2d 1032, 1035, n 2 [1987].) As in the related provisional remedy of injunction in aid of arbitration, the reason why the prospective award may become ineffectual must be related to some act that the respondent threatens or performs. (Cf., CPLR 6301; Matter of Saferstein v Wendy, supra, at 1034; McLaughlin, Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C7502:4, 1988 Pocket Part, at 58; Mar. 18, 1985 Legislation Report No. 57 of NY State Bar Assn Comm on Civil Practice Law and Rules.)
In the case at bar, neither the ground advanced in the petition nor the possible impact of German law amounts to action that respondents are taking to render the arbitration award ineffectual. Petitioner concedes as much by emphasizing the nondomiciliary status of respondents. But, this status simply brings petitioner within the first ground for an attachment in an action (CPLR 6201 [1]); this ground is unavailable for an attachment in aid of arbitration (CPLR 7502 [c]).
For an additional reason, petitioner is not entitled to the discretionary remedy of attachment. The doctrine of unclean hands should be as much relevant to the provisional remedy of attachment as it is to the preliminary injunction (compare, 7A Weinstein-Korn-Miller, NY Civ Prac fl 6201.03 ["Discretionary character of attachment”], with f 6301.22 ["Elements of discretion — clean hands”]).
If the German law is in fact what petitioner claims it to be —barring enforcement of judgments or awards arising from debit balances from trading in options and futures by West German nonmerchants — the application for this attachment, in effect, is an effort to circumvent that law. Indeed, the petitioner, who in its Brussels office accepted this account from respondents, knowing they were West German nationals and residents of Nuremberg, is deemed to have known of the West German legal prohibition. Therefore, petitioner took a risk, after years of profitable transactions, that a time would *887 come that it could not collect a debit balance against respondents in the courts of their own country.
The issue, then, is whether it is equitable to relieve petitioner of the consequence of this risk. The question answers itself. An applicant for such relief, accusing its adversaries of hiding behind the German law, who seeks the assistance of the court to circumvent that law, comes to court with unclean hands.
In view of the foregoing conclusions, it is unnecessary to review petitioner’s likelihood of success on the merits. Suffice it to say that the circumstance that the facts are vigorously contested, while perhaps sufficient to defeat an attachment in a plenary action, is not fatal to an attachment in aid of arbitration. (Matter of Saferstein v Wendy, supra, at 1036-1037.)
Finally, the cross motion relies on the rule that jurisdiction cannot be predicated solely on the acts of the petitioner as agent for the respondents. (See, e.g., Haar v Armendaris Corp., 31 NY2d 1040, revg on dissent 40 AD2d 769; Merrill Lynch, Pierce, Fenner & Smith v Alexiou, 397 F Supp 1292.) Petitioner relies on other cases (Banco Ambrosiano v Artoc Bank & Trust, 62 NY2d 65; Drexel Burnham Lambert v D'Angelo, 453 F Supp 1294), but these were decided in the context of quasi-in rem jurisdiction.
The court need not resolve the effect of these authorities on the facts: the respondents are West Germans; the account was maintained in Belgium; the account agreement called for the application of New York law (subject to modification by the enactment of any inconsistent statute or rule); trades were initiated by respondents from Germany in communication with petitioner in Brussels; trading took place on New York exchanges; confirmations and statements were sent from the New York office of petitioner; and respondents maintain another account with the foreign office of a different broker which has a New York office. Rather, given the resolution of the petition, it is unnecessary to decide the cross motion. Consequently, the cross motion will be dismissed.
Accordingly, the petition is denied and the proceeding dismissed, with costs to respondents; the cross motion is dismissed as academic.
*888 Settle judgment containing a provision for the termination of the temporary restraining order five days after entry of the judgment and for the determination of any damages occasioned by the restraint of respondents’ Fahnestock account which may be covered, but not limited, by the undertaking furnished as a condition of the temporary restraining order. (Cf., CPLR 6212 [e].)