655 F.Supp. 475 (1987)
NEW DAWN NATURAL FOODS, INC., Plaintiff,
v.
NATURAL NECTAR CORPORATION, et al., Defendants.
No. 86-2145C(6).
United States District Court, E.D. Missouri.
March 17, 1987.
Michael Hardcastle, St. Louis, Mo., for plaintiff.
Melvin R. Neisner, Jr., St. Louis, Mo., for defendants.

ORDER AND MEMORANDUM
GUNN, District Judge.
IT IS HEREBY ORDERED that defendant FFE Transportation Services, Inc.'s motion to dismiss for lack of personal jurisdiction and for failure to state a claim is denied.
Plaintiff's First Amended Complaint for Breach of Contract alleges the following facts:

*476 Plaintiff, a Missouri corporation, ordered 12,960 "Cream Freeze" frozen dessert bars from defendant Natural Nectar Corp., a Colorado corporation, for delivery by July 2, 1986. Plaintiff required delivery by July 2nd because the dessert bars were to be sold at plaintiff's booth at the VP Fair July Fourth celebration in St. Louis, Missouri on July 4th, 5th and 6th. Natural Nectar Corp. contracted with defendant FFE Transportation Services, Inc. (FFE), a Texas corporation, to deliver the Cream Freezes to plaintiff by July 2, 1986. Natural Nectar Corp.'s invoice and bill of lading gave plaintiff's delivery address as "3175 S. Grand Blvd. St. Louis, MI 63118" erroneously abbreviating Missouri as MI instead of MO, and FFE sent the Cream Freezes to St. Louis, Michigan.[1] On the afternoon of July 3, 1986 FFE's driver arrived at FFE's office in Chicago, Illinois with the entire shipment of Cream Freezes after attempting to deliver the shipment to St. Louis, Michigan. FFE informed plaintiff of the situation and promised delivery to plaintiff by 5:00 a.m. on July 4, 1986. FFE's driver did not reach St. Louis, Missouri until the afternoon of the 4th at which time plaintiff could not take delivery. FFE's driver left St. Louis, Missouri without delivering the Cream Freezes.
Plaintiff seeks $100,000 consequential and incidental damages against Natural Nectar Corp. for breach of its contract with plaintiff and against FFE for breach of its contract with Natural Nectar Corp. and for failure "to make delivery of the goods when the shipment finally arrived in St. Louis, Missouri."
Now under consideration is FFE's motion under Rule 12(b)(2), Fed.R.Civ.P., to quash service of process and to dismiss the complaint against it for lack of personal jurisdiction and motion under Rule 12(b)(6) to dismiss for failure to state a claim.

Failure to state a claim
FFE argues that plaintiff was not a party to the contract of delivery between FFE and Natural Nectar Corp. and therefore cannot sue FFE directly for breach of the contract. Plaintiff argues in opposition that as the consignee of the shipment it has a cause of action against FFE for misdelivery/delay in delivery. In support of its argument plaintiff cites the Court to Kologel Co. v. Down in the Village, Inc., 539 F.Supp. 727, 730 (S.D.N.Y.1982) which holds without citation to authority that the named consignee under a contract for the shipment of goods has standing to sue the carrier for misdelivery.
The Court concludes that under Missouri common law a consignee not in privity with a carrier has a cause of action against the carrier for damages arising out of the carrier's negligent performance of the contract to deliver.
In Textile Distributors, Inc. v. Roadway Express, Inc., 397 S.W.2d 760 (Mo.Ct.App. 1965), the buyer/consignee of a shipment of merchandise sued the carrier for damage to the goods occurring while they were in the carrier's custody. Metals Refining Co. v. St. Louis-San Francisco Co., 243 Mo.App. 991, 137 S.W.2d 977 (1940), recognizes the right of a consignee to maintain an action against a railroad for loss of goods during shipment notwithstanding the absence of a bill of lading assigned by the consignor to the consignee. Finally, Gardner v. Mid-Continent Grain Co., 168 F.2d 819 (8th Cir.1948), recognizes a consignee's cause of action in negligence against a carrier for damages from delay in the shipment of soybeans.
In Ernest E. Fadler Co. v. Chicago, I.R. & P.R. Co., 261 S.W.2d 394 (Mo.Ct.App. 1953), the court, quoting an earlier Missouri case, described the duty of a carrier with regard to timely delivery as follows:
[The common law of Missouri] requires of common carriers due diligence, this being as much a part of their contract as the obligation to deliver the property transported in good condition, and if any unreasonable and unnecessary delay occurs, either in the transportation thereof *477 or its delivery after arrival at the terminus of the route, for the immediate and proximate damages resulting from such neglect of duty the carrier is liable.
Id. at 398.
Based upon these cases the Court concludes that FFE's motion to dismiss plaintiff's complaint for failure to state a claim must be denied.

Personal Jurisdiction
In considering a motion to dismiss for lack of personal jurisdiction over a nonresident defendant, a federal diversity court is required to engage in a two-step inquiry: first, whether defendant committed one of the acts enumerated in the forum state's long-arm statute; and second, whether defendant had sufficient contacts with the forum state related to the cause of action such that maintenance of the suit does not offend the due process clause of the fourteenth amendment. The Land-O-Nod Co. v. Bassett Furniture Industries, Inc., 708 F.2d 1338 (8th Cir.1983); Scullin Steel Co. v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 312 (8th Cir.1982).
The Missouri long-arm statute extends jurisdiction of the courts of the state over any corporation as to any cause of action arising from, among other acts: (1) the transaction of any business within the state; (2) the making of any contract within the state; and (3) the commission of a tortious act within the state. Mo.Rev.Stat. § 506.500 (1982). This statute is intended to extend jurisdiction over non-resident defendants to the limits allowed under the due process clause of the fourteenth amendment. State ex rel. Deere & Co. v. Pinnell, 454 S.W.2d 889, 892 (Mo.1970); State ex rel. Wichita Falls General Hospital v. Adolf, 728 S.W.2d 604, ___ (Mo.Ct. App.1987).
The Due Process Clause of the fourteenth amendment requires that a defendant have such "minimum contacts" with the forum that exercise of jurisdiction over it does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The defendant's contacts with the forum must be purposeful and such that it "should reasonably anticipate being haled into court there." World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). "In judging minimum contacts a court properly focuses on the relationship among the defendant, the forum, and the litigation." Calder v. Jones, 465 U.S. 783, 788, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984). These principles were most recently reaffirmed by the Supreme Court in Asahi Metal Industry Co. v. Superior Court of California, ___ U.S. ___, 107 S.Ct. 1026, 93 L.Ed.2d 92 (1987).
The Court concludes that entering into a contract to deliver goods to a party in Missouri is an act within the scope of Missouri's long-arm statute. Although FFE may not have been aware at the outset that the contract of delivery called for completion in Missouri, FFE's alleged subsequent actions of contact with plaintiff and attempted delivery in Missouri of the goods would bring FFE within the acts enumerated in the statute.
The Court further concludes that FFE's alleged activities constitute sufficient purposeful minimum contacts with Missouri such that the exertion of this Court's personal jurisdiction over FFE in an action arising out of those contacts does not violate the Due Process Clause of the fourteenth amendment.
Accordingly, FFE's motion to dismiss for lack of personal jurisdiction is denied.
NOTES
[1] The Court takes judicial notice that MI is the postal abbreviation for Michigan and that St. Louis, Michigan is a city in mid-Michigan with a population of ca. 4,000. Hammond's World Atlas (Collector's ed. 1985).