**BIBLE & GOSPEL TRUST, and Brethren, an Unincorporated Association, Plaintiffs,**

v.

**Richard K. WYMAN and Daniel J. Little, Defendants.**

**No. CIV.04–700 MJD/JGL.**

United States District Court, D. Minnesota.

Jan. 31, 2005.

Marshall H. Tanick, Mansfield, Tanick & Cohen, P.A. for and on behalf of Plaintiffs.

Lawrence R. King and Carrie A. Daniel, Larson King, LLP. for and on behalf of Defendant Daniel J. Little.

## MEMORANDUM OPINION AND ORDER

DAVIS.

Before the Court is Defendant Daniel J. Little's ("Little") motion to dismiss for lack of personal jurisdiction.

*Background*

Plaintiff, The Exclusive Brethren (the "Brethren"), is a religious organization with a worldwide membership of approximately 45,000; about 350 of which live in Minnesota. Plaintiff Bible & Gospel Trust (the "Trust") is a trust that owns the copyright to the Brethren's religious writings. Defendant Richard Wyman, a Minnesota resident, is a former member of the Brethren, who created, owned and operated a website at www.exclusivebrethren.net. Plaintiffs allege the Brethren were defamed at this website, and that the Trust's copyrights were infringed by the unauthorized publishing of copyright materials. Plaintiffs also allege that through the website, Wyman interfered with Plaintiffs' business; a claim that parallels the defamation claim. Defendant Little is a Canadian citizen, residing in Winnipeg, Manitoba. From approximately mid–2003 to January or February, 2004, Little is alleged to have "maintained and operated the aforementioned website in collaboration and with the authorization of Defendant Wyman". Amended Complaint ¶ 7.

Defendant Little has moved for a dismissal of the claims against him on the basis that this Court does not have personal jurisdiction over him.

*Standard*

Federal courts have been instructed to use a two-step inquiry when determining whether it has personal jurisdiction over a non-resident party: (1) whether the facts presented satisfy the forum state's long-arm statute, and (2) whether the non-resident has minimum contacts with the forum state, so that the court's exercise of jurisdiction would be fair and in accordance with due process." *Soo Line R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 528 (8th Cir.1991). The inquiry collapses into a single question of whether the exercise of personal jurisdiction comports with due process, when a state construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the due process clause. *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 818 (8th Cir.1994). Minnesota has construed its long-arm statute to have the maximum extraterritorial effect allowed under the due process clause. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 410–411 (Minn.1992).

The due process clause requires that there be "minimum contacts" between the defendant and the forum state before the

forum state may exercise jurisdiction over the defendant. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The "minimum contacts" requirement will be satisfied if the defendant's conduct and connection with the forum state is such that the defendant should reasonably anticipate being haled into the forum state's court. *World–Wide,* at 291, 100 S.Ct. 559.

■ In determining whether sufficient minimum contacts exist, the Eighth Circuit considers the following factors: 1) the nature and quality of the contacts; 2) the quantity of the contacts; 3) the connection between the cause of the action and the contacts; 4) the interest of the forum; and 5) the convenience of the parties. *Digi–Tel Holdings, Inc. v. Proteq Telecommunications Ltd.,* 89 F.3d 519, 522–23 (8th Cir. 1996).

■ The burden is on the plaintiff to prove the minimum contacts necessary to satisfy due process. *Hardrives, Inc. v. City of LaCrosse, Wisconsin,* 307 Minn. 290, 240 N.W.2d 814, 816 (1976). *See also, Newhard, Cook & Co. v. Inspired Life Centers, Inc.,* 895 F.2d 1226, 1228 (8th Cir.1990). "At the pre-trial stage, however, the plaintiff need only make a prima facie showing of sufficient Minnesota-related activities through the complaint and supporting evidence, which will be taken as true." *Hardrives,* 240 N.W.2d at 816.

■ When the court premises jurisdiction on a defendant upon the relationship between the defendant's activities in the forum state and the plaintiff's claim, the court is exercising specific jurisdiction. *Morris v. Barkbuster, Inc.,* 923 F.2d 1277, 1280 (8th Cir.1991) (citation omitted). A court may exercise general jurisdiction upon an out-of-state defendant when the defendant has "continuous and systematic contacts" with the forum state, regardless of whether the plaintiff's claims arise out of, or are connected with, the defendant's

activities in the forum state. *Id.* at 1280–81. In this case, Plaintiffs have not made a prima facie showing that Little engaged in "continuous and systematic contacts" with the state of Minnesota that would subject him to the exercise of general jurisdiction. Accordingly, the Court will focus on whether Little would properly be subject to specific jurisdiction.

*Argument*

Little argues that he had insufficient contacts with Minnesota to justify the maintenance of personal jurisdiction over him. He states that he has only traveled to Minnesota twice on matters unrelated to this action and that he conducts no business in Minnesota. As to his contacts with Defendant Wyman, Little asserts that such contacts were not sufficient to impose personal jurisdiction. Any contact he had with Wyman was over the phone, via mail, e-mail or the Internet, and that such contact is not sufficient for jurisdictional purposes. The website was created and maintained in Minnesota, and he only agreed to maintain the website from Canada for a limited period of time.

Little further argues that Minnesota has no interest in providing a forum for the claims against him. Because the website was used merely as a forum for the expression of opinions concerning the Brethren, there were no commercial aspects to the site at all, thus no Minnesota consumers to protect. Further, the Complaint does not involve any allegations of harm to a Minnesota resident.

In response, Plaintiffs argue that Little did more than maintain the website for a limited amount of time. Plaintiffs allege that Little and his wife own Metrex Systems Consulting, Inc., which is an Internet server and computer software provider. From mid 2003 until early 2004, Wyman's website was allegedly hosted on the Me-

trex System. Plaintiffs further allege that the Defendants planned to slowly shift the website from Wyman to Little in order to allegedly avoid legal action by Plaintiffs. Little is also alleged to have created and maintained his own web site, similar to Wyman's, in an attempt to protect Wyman from suit. However, this site was shut down after a short time, but contained a link to another site that discusses the Brethren.

*Analysis*

### I. Defamation Claim

As noted above, Minnesota's long-arm statute has been interpreted to be coextensive with the limits of due process. With regard to claims of defamation, however, the long-arm statute controls. *Northwest Airlines, Inc. v. Friday*, 617 N.W.2d 590, 593 (Minn.App.2000). Minnesota's long arm statute provides that a Minnesota court may exercise personal jurisdiction over a non-resident defendant when such defendant commits an act outside of the state of Minnesota causing injury in Minnesota, except no jurisdiction shall be found if "the cause of action lies in defamation or privacy." Minn.Stat. § 543.19, subd. 1(a)(3)(1998). In *Friday*, the Minnesota Court of Appeals held that e-mails containing allegedly defamatory comments, originating outside of Minnesota to Minnesota recipients, was not an act committed in Minnesota for purposes of Section 543.19, subd. 1(a)(3).

> The act that Friday performed was sending allegedly defamatory e-mail press releases. When she committed that act, she was in Washington, not Minnesota. Because Friday committed an act outside Minnesota that allegedly caused damage inside the state, the relevant provision of the long-arm statute is subdivision 1(d), with its explicit exception for defamation actions. As a result, the district court was correct to conclude that it lacked personal jurisdiction over

Friday for Northwest's defamation claim.

*Id.* at 594. *See also, Jets Prolink Cargo, Inc. v. Brenny Transportation, Inc.*, 2003 WL 22047910, *4 (D.Minn.2003)(relying on *Friday, supra*, finding no personal jurisdiction over defendant who was alleged to have made defamatory telephone call from outside of Minnesota); *Bar–Meir v. Walker*, 2002 WL 832613, *2 (D.Minn.2002)(relying on *Friday, supra*, finding no personal jurisdiction over defendant who sent two e-mails that were allegedly defamatory from outside of Minnesota).

In this case, Plaintiffs argue that Little's involvement with Wyman's website was conduct committed in Minnesota, as the site was originally hosted from Minnesota. This argument, however, does not appear to be consistent with the applicable Minnesota law. Although the allegedly defamatory site at issue in this case originated in Minnesota, Little's "acts" in maintaining the site were committed in Winnipeg, where his computer was located. Accordingly, as to the defamation claim, Plaintiffs have not established that this Court has personal jurisdiction over Little.

### II. Copyright and Business Interference Claims

With respect to the copyright infringement and business interference claims, Plaintiffs argue that sufficient minimum contacts exist by virtue of Little's participation and maintenance of the Wyman website, as well as his own website. In determining whether the maintenance of an internet website is sufficient to confer personal jurisdiction over a non-resident defendant, many courts, including the Eighth Circuit, have adopted an "Internet-based specific jurisdiction" test first developed in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D.Pa.1997). *See eg., Lakin v. Prudential Securities, Inc.*,

348 F.3d 704, 711 (8th Cir.2003)(adopting *Zippo* test for determining specific jurisdiction); *ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707, 713 (4th Cir.2002) (same). In conducting a review of cases addressing personal jurisdiction based on Internet use, the court in *Zippo* stated:

> [O]ur review of the available cases and materials reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper... At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction ... The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo,* 952 F.Supp. at 1124 (internal citations omitted).

The website at issue in this case would fall in the "middle ground"; the Defendants do not conduct business over the Internet, yet the site allows users to exchange information with the host computer. The *Zippo* test thus dictates that the Court examine the level of interactivity and the commercial nature of the exchange. As noted above, there is no commercial activity connected with the website and the level of interactivity only allowed users to post and respond to messages, to sign a guest book and to communicate with other visitors. The Eighth Circuit has not yet ruled as to whether a website, such as the one at issue in this case, involves a level of interactivity sufficient to allow the court to exercise personal jurisdiction over the non-resident defendant. Other courts in this circuit, however, have addressed similar websites. For example, in *Zidon v. Pickrell,* 344 F.Supp.2d 624, 630 (D.N.D. 2004), the court held that a website that included an e-mail hyperlink, information and a bulletin board to allow individuals accessing the site to exchange information, without more, did not establish sufficient minimum contacts which would allow the court to exercise personal jurisdiction over the non-resident defendant. *See also, Atkinson v. McLaughlin,* 343 F.Supp.2d 868, 874 (D.N.D.2004)(website that included an e-mail hyperlink, by itself, did not render the website "interactive" under the *Zippo* test).

The analysis did not stop with the *Zippo* test, however. In determining whether the exercise of personal jurisdiction was proper, the court in both the *Zidon* and *Atkinson* decisions looked to the *Zippo* test and the "effects" test articulated in *Calder v. Jones,* 465 U.S. 783, 789, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The "effects" test provides that the exercise of personal jurisdiction over a nonresident does not violate due process where 1) the defendant committed an intentional tort; 2) the plaintiff felt the brunt of the harm in the forum state, such that the forum state was the focal point of the tortious activity; and 3) the defendant

expressly aimed the tortious conduct at the forum such that the forum state was the focal point of the tortious activity. *Calder,* at 788–790, 104 S.Ct. 1482. Applying this test to the facts before it, the Court held that as the allegedly libelous story concerned a California resident, whose career was centered in California, and where the story was drawn from California sources and the brunt of the harm was suffered in California, the focal point of the litigation was California and jurisdiction was thus proper. *Id.*

The court in *Zidon* ultimately determined that the exercise of jurisdiction over the non-resident defendant comported with due process given the facts that established deliberate and knowing conduct directed toward the forum state. *Id.* at 633. *See also, Atkinson,* at 879 (same).

In *Revell v. Lidov,* 317 F.3d 467 (5th Cir.2002), the Fifth Circuit Court of Appeals also applied the *Zippo* and "effects" tests to determine whether personal jurisdiction could be exercised over a non-resident defendant. In *Lidov,* the plaintiff, a Texas resident, sued an individual who wrote an article that contained allegedly defamatory comments directed at the plaintiff, which article appeared on a website maintained by Columbia University. Contrasting the facts of *Calder* with the facts presented in the case before it, the *Lidov* court refused to exercise jurisdiction over the defendant as the comments in the article did not include references to Texas and the article refer to the Texas activities of the individual defendant. *Lidov,* at 473. Further, the court found the article was not directed to Texas readers, as distinguished from other readers, and Texas was not the focal point of the article. *Id.*

In this case, the evidence appears undisputed that the website at issue and its contents were not specifically directed to Minnesota or its residents. Rather, the focal point of the website was directed at the Brethren organization. By taking over the maintenance and operation of the website, which could be done from his residence in Canada, Little did not engage in any activities that were specifically directed to Minnesota. Because no evidence has been presented to the Court to show that the focal point of the website at issue was directed at Minnesota or its residents, Plaintiffs have not met their burden of showing that exercising jurisdiction over Little would comport with due process. *See, Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 400 (4th Cir.2003) (to bring defendant with jurisdiction of forum state, defendant had to have acted with 'manifest intent' of targeting forum state resident).

■ Finally, Plaintiffs make much of an e-mail exchange between Little and Wyman, suggesting that Little acknowledged his involvement with the website could subject him to suit anywhere. Jackola Affidavit, Ex. 7. However, the e-mail referred to above, was an e-mail received by Little and forwarded to Wyman. Little was not the author of the e-mail, and any comments contained therein have no bearing on Little's reasonable expectations of being haled into a Minnesota court.

III.  Request for Additional Discovery

■ Plaintiffs argue that prior to granting Little's motion to dismiss, the Court should grant Plaintiffs an opportunity to conduct jurisdictional discovery. Plaintiffs assert that they have served Little with written discovery requests, and that Little had not responded to such requests when this motion was filed. In response, Little asserts that he has never been served with written discovery requests of any kind, but that Plaintiffs have been engaging in discovery with Wyman for a number of months, to which Wyman has produced approximately 4,500 pages.

Plaintiffs have not identified for the Court what discovery should be conducted that may lead to information establishing personal jurisdiction over Little. Under these circumstances, the Court sees no basis upon which to grant an opportunity to conduct jurisdictional discovery. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074, n. 1 (8th Cir.2004)(citing *Carefirst*, 334 F.3d at 402)("When a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery.")

IT IS HEREBY ORDERED that Defendant Daniel Little's Motion to Dismiss [Docket No. 24] is GRANTED. The claims asserted against Daniel Little are dismissed without prejudice.